## BATTERSON et al. v. MAGONE, Collector.

(Circuit Court, S. D. New York. November 18, 1891.)

CUSTOMS DUTIES—CLASSIFICATION—MEXICAN ONYX.

So-called "Mexican Onyx" not being a chalcedony or onyx proper, as defined in mineralogy, but being a carbonate of lime, containing a small proportion of carbonate of magnesia and ferrous oxides, and having the other characteristics of marble in respect of texture, hardness, and capacity for being worked and polished, is "marble," within the provision of paragraph 467, Tariff Ind. (New,) Schedule N, Tariff Act, March 3, 1883.

At Law.

This action was brought by the plaintiffs against the defendant, collector of the port of New York, to recover the amount of an alleged overpayment of duties on certain merchandise imported by the plaintiffs into the port of New York in the month of April, 1889, which was invoiced to the plaintiffs from Vera Cruz as "196 blocks marble," and was classified for duty by the defendant collector as "marble in blocks," at 65 cents per cubic foot, under Tariff Ind. (New,) paragraph 467 of Schedule N of the tariff act of March 3, 1883. Against this classification the plaintiffs duly protested, claiming, first, that the merchandise was duty free, as a "crude mineral, not advanced in value or condition by refining, grinding, or manufacture," under the free list of said tariff act, paragraph Tariff Ind. (New) 638; or by "similitude in material, quality, and uses to agates unmanufactured," under said free list paragraph, Tariff Ind. (New) 596; or, if not, then at one dollar per ton, as "unmanufactured or undressed stones, building or monumental stone, not marble," under paragraph Tariff Ind. (New) 487 of said Schedule N of said tariff act, either directly or by similitude in material, quality, and uses. The plaintiffs duly appealed to the secretary of the treasury from the decision of the collector, and the secretary affirmed the decision of the defendant collector, and this action was thereupon brought within the time limited by law to recover the alleged overpayment of duties. On the trial the plaintiffs did not offer any proof that the material in question was an onyx or chalcedony belonging to the quartz group, as understood in mineralogy. They also abandoned their claim that it assimilated to agate unmanufactured; and rested their contention entirely upon the ground that the material imported by them had been known from the time of its introduction into this country, and at the time of the passage of the tariff act of March 3, 1883, as "Mexican Onyx;" that it was never known in the trade as marble, or as one of the marbles, but that the term "marble," as used in trade at that time, excluded this article as imported by them. To sustain this contention plaintiffs introduced a number of witnesses from the marble trade, who dealt in this article at the time of the passage of the tariff act. They also endeavored to prove by the testimony of one witness that the material was extracted from mines in Mexico, and was consequently, if not a monumental or building stone, a crude mineral, within the ordinary meaning of that term. Plaintiffs also offered testimony showing that the material in question

was used to some extent in buildings for columns and interior decorations, and also had been used in some instances in the interior of mortuary vaults in cemeteries. On behalf of the defendant collector the testimony of an expert chemist was introduced, who had made an analysis of the material imported by the plaintiffs, with the result that this so-called "Mexican Onyx" was shown to contain:

| | |
|---|---|
| Carbonate of lime, | 95.56% |
| Carbonate of magnesia, | 2.32 |
| Anhydrous sulphate of lime, | 0.13 |
| Ferrous and ferric oxides, | 1.85 |
| Residue, | 0.14 |
| | 100.00% |

—Also that this material had a crystalline structure, composed of rhombohedral crystals, and scientifically belonged to the group of calcites known as "marble." The testimony of this witness also showed that ordinary marbles contained from 78 per cent. to 99 per cent. and upwards of carbonate of lime, and that the carbonate of magnesia in marbles ran from 20 per cent. down to 1 per cent.; and that like impurities were found in marbles as had been shown by the analysis to exist in this Mexican onyx. Trade testimony was also given on behalf of the defendant, showing that this material was extracted from mountain quarries in Mexico; was used in the manufacture of mantel-pieces, vases, pedestals, table tops, columns, etc., and also for wainscoting and other mural decorations; that it was sawed, polished, cut, and turned like other marbles; that it could never, by reason of its characteristics of texture and composition, be used in places exposed to the weather; that it was never used in the structure proper of buildings or of vaults, and was only employed for decorative purposes, and could never be used for monuments, tomb-stones, or shafts, where exposed to the weather. It was also shown that this material came in blocks, in the same manner as in the case of other varieties of marble, excepting that the blocks of Mexican onyx averaged somewhat smaller than the blocks of the other fine foreign marbles. The principal trade witness for the defendant testified that, although this material was generally known in the wholesale trade as "Mexican Onyx," yet that in the trade that dealt in it (which was only to a limited extent in the year 1883 and prior to that date) it was known and recognized as "Mexican Onyx Marble" or "Onyx Marble." Testimony that it was also known as "Marbre Onyxe" in France, and as "Onyx Marble" in the Spanish language in Mexico, from whence the material came, was excluded by the court as incompetent evidence of trade designation. At the close of the testimony motions were made on behalf of the plaintiffs and of the defendant, respectively, for a direction of verdict by the court, which motions were denied.

*Hartley & Coleman*, for plaintiffs.

*Edward, Mitchell*, U. S. Atty., and *James T. Van Rensselaer*, Asst. U. S. Atty., for defendant.

LACOMBE, Circuit Judge, (*charging jury.*) You will not be troubled with any determination of the question as to similitude or similarity. Those provisions in the tariff laws refer only to articles which have not been enumerated in some way or other in the tariff. As I find this article enumerated,—certainly in one place, if not in more, in the tariff, —the particular paragraph referring to similitude does not apply. This is an article which evidently has come to this country quite recently; but it was known here prior to 1883, and therefore we would naturally expect that in some way or other congress was aware of its existence, and by some terminology or other in the statute did provide for it. Referring to the tariff, we find a provision in paragraph 638, in the free list, enumerating " crude minerals, not advanced in value or condition" beyond a certain stage. I charge you that this is a crude mineral, as described therein; and, if there were nothing else in the tariff but that provision, we would have the case determined. It seems, however, unreasonable to suppose that congress would have provided for an article such as this, coming to this country in considerable quantities, and entering largely into trade, by so brief and general a description; and, looking further to the tariff, we find two paragraphs, which it is contended on one side or the other may properly be applicable to this article. One of these is paragraph 487, which provides for a rate of one dollar per ton on " stones, unmanufactured or undressed, freestone, granite, sandstone, and all building or monumental stone, except marble."

The first question for you to determine in regard to this article is whether it is or is not properly building or monumental stone other than marble, within the meaning of that paragraph. As to the meaning of those two words "building" stone and " monumental " stone, I charge you that a building stone is one which enters structurally into the composition of a building, not something added as pure ornament to a structure complete without it. I further charge you that a monumental stone is one which is a structural component of a monument, and not something which is added as mere ornament to a completed monument. With those definitions of the two words " building " stone and " monumental" stone in your minds, you will apply what you have heard from the evidence here as to the uses to which this stone is put when it is availed of in the process of building, or in the process of erecting monuments; and you will determine whether or not it is building stone or monumental stone on the evidence which has been given to you. But should you reach the conclusion that it is building stone or monumental stone, there then remains the other question,—as to whether it is or is not marble; for the very paragraph which lays a duty on building and monumental stone excepts marble from its operation. That brings you, then, to the final question in the case,—whether it is or is not marble. The word "marble," as it is used in common speech, is undoubtedly broad enough to cover this article here; and we have learned that its composition, material, and appearance are such that it would be properly classified under the ordinary use of the word " marble " in the English language, as given to us by the dictionaries.

It is contended, however, that in trade and commerce there is a different meaning given to the word "marble"—or, rather, that there was a different meaning so given to the word "marble" in 1883—from that which is in use in common speech. You will understand, of course, that all these tariff acts are passed in regulation of commerce, and that the usages of commerce and the nomenclature of merchants and wholesale dealers in the various articles named in the tariff are taken into consideration by congress when framing tariff laws when using the language in which they express themselves. Of course it is not enough for a party who claims that his article is not within the ordinary meaning of the terms of common speech to show that it always has in trade some special name that it is called by, unless he goes further, and shows that in that same trade the general term, which otherwise would cover it, is used exclusively for articles other than the one as to which he claims the special designation. For instance, as an illustration, (which I have used quite frequently, but perhaps you will understand it better from an illustration than from a mere statement in words,) wheat is a "grain;" and therefore, if a tariff act provided a certain duty for grain, then wheat of all kinds and sorts would pay that duty. Now, no amount of evidence that certain seeds were always bought and sold as "winter wheat," and never were called anything else in trade, would take them out of the general designation of grains, unless the trade testimony went further, and showed that the commerce of this country understood the word "grain" as referring exclusively to cereals other than wheat. And so here, in order to establish the proposition that the articles imported here are not marbles, it is not sufficient for the plaintiff to show that they are always bought and sold as onyx, or as Mexican onyx; he must go further, and satisfy you from testimony, and by a fair preponderance of proof, that the trade in this country in 1883 dealt in that article as something different from marble; and that the various kinds and varieties of marble which it knew, dealt in, and recognized as marble, did not include this particular article. In other words, when the committees of congress were drawing this bill, and the members of congress were voting upon it, if they, at that time, had been fully informed as to trade knowledge on this whole subject, would they have considered that by the use of the word "marble" they did or did not include this Mexican onyx? If congress, in 1883, thus enlightened by the trade knowledge of those who dealt in marbles and in Mexican onyx, would have understood that "marble" included "Mexican onyx," then you must find that this importation is marble. If, however, congress would have understood at that time that when it used the word "marble," although it might include many varieties of limestone, carbonates, calcites, etc., it still did not include this article then known and dealt in here, you must find that the article imported in this case is not marble.

The jury rendered a verdict for the defendant.